# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>VINCENT GALARZA,<br>                Defendant. | Case No. 18-mj-146 (RMM)<br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

The government has appealed a Magistrate Judge decision denying the government's motion for pretrial detention of the defendant, Vincent Galarza, who has been charged by criminal complaint, with knowingly conspiring to Distribute Child Pornography through Interstate Commerce, in violation of 18 U.S.C. § 2252(a)(2) & (b)(1), Crim. Compl. at 1, ECF No. 1, based on evidence that the defendant, from approximately June 25, 2016 to December 21, 2016, uploaded more than 500 videos depicting child pornography to, and from approximately May 31, 2017 to February 9, 2018, downloaded approximately 174 videos from, a website ("the CP Website"), which was hosted overseas "as a hidden service on the Tor network" and "dedicated to the advertisement and distribution of child pornography," Aff. Supp. Crim. Compl. and Arrest Warrant ("Franklin Aff.") at 3, 6, ECF No. 1-1.[1] This is the government's second attempt to have the defendant detained pending trial. The government's first effort was based on information contained in the criminal complaint detailing the defendant's distribution of child pornography; the second unsuccessful request for detention, giving rise to the instant appeal, is

---

[1] While the name of the website is known to law enforcement, this information has not been disclosed to avoid alerting "users to the fact that law enforcement action is being taken against users of" the site and to minimize the risk of "provoking users to notify other users of law enforcement action, flee, and/or destroy evidence." Franklin Aff. at 1 n.1.

1

based on additional evidence that the government has only recently discovered, namely, that the defendant surreptitiously recorded a minor in her bathroom and bedroom, used those recordings in an attempt to extort her for additional videos, crawled into bed with the same minor on multiple occasions when she was 12 years old, and has threatened to rape the minor's adult sister, while holding a pellet gun. Gov't's Mot. for Review and App. of Release Order ("Gov't's Mot.") at 9–13, ECF No. 18.

This Memorandum Opinion sets out the findings and reasons for detention. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (noting that the Bail Reform Act requires pretrial detention order be supported by "a clear and legally sufficient basis for the court's determination" in written findings of fact and a written statement of the reasons for the detention or in "the transcription of a detention hearing" (quoting *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988))) (per curiam).

## I. BACKGROUND AND FINDINGS

Following the defendant's arrest, on December 11, 2018, in the Eastern District of New York, the government's motion for pretrial detention was denied by a Magistrate Judge in that district at a detention hearing held the same day. Gov't's Mot. at 1. The government did not appeal. *Id.* Then, on December 19, 2018, the defendant appeared before a Magistrate Judge in this district, where the charges arose, and the defendant was again released, with the government's consent, on the same release conditions previously imposed in the Eastern District of New York, which conditions included that the defendant was restricted to home detention at his parent's house, with location monitoring, and no travel outside New York City or

Washington, D.C. without Court approval, and that he not have contact with any minor or use any device with internet access, along with execution of a $200,000 bond secured by real property. Order Setting Conditions of Release at 2, ECF No. 6. Minute Entry (Dec. 19, 2018); Order (Dec. 28, 2018), ECF No. 10. During the ensuing five months, the defendant agreed to exclude time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), *see, e.g.,* Minute Entry (Dec. 19, 2018); Order (March 20, 2019); Minute Entry (May 3, 2019), and the government continued its investigation. Specifically, the government conducted forensic examinations of both the server that hosted the CP Website after the server was seized by South Korean law enforcement and the defendant's electronic devices, which included a self-built computer consisting of multiple hard drives in a RAID (Redundant Array of Independent Disks) configuration and was lawfully seized pursuant to a search warrant at the time of the defendant's arrest. Due to the complex "electronic configurations" of the defendant's computer, "it took law enforcement considerable time to forensically extract and review the approximately 1.7 million images and videos recovered from the device" and "to override the defendant's password," Gov't's Mot. at 10.

The government's investigation uncovered evidence of additional criminal conduct by the defendant, prompting the government to seek reconsideration of pretrial detention. S*ee* Gov't's Mot. Reconsider Def.'s Bond Status, ECF No. 12. On May 3, 2019, the Magistrate Judge denied the government's motion and continued the defendant on pretrial release, after imposing the additional conditions that the defendant have no contact with witnesses and not receive any visitor who is in possession of any device with internet access. *See* Order Denying Gov't's Mot. for Reconsideration and Modifying Conditions of Release to Add Additional Conditions, ECF No. 17. The government's filed an appeal of the release order, on May 5, 2019, Gov't's Mot. at

3

1, and a further detention hearing was held by this Court on May 7, 2019, Minute Entry (May 7, 2019).

At the most recent detention hearing, the government relied, as support for seeking the defendant's pretrial detention, on both the factual proffer set out in the criminal complaint, as well as a summary of the new evidence obtained by the government through forensic analysis of seized electronic devices, and witness interviews.

The multiple steps that the defendant took, over many months, as user "thisthishold," in order to access child pornography content on the CP Website, is indicative of his overall commitment to distribution of child pornography. The website was a Tor network-based child pornography website, meaning it anonymized Internet activity "by routing user's communications through a global network of relay computers (or proxies), thus effectively masking the internet-protocol ("IP") address of the user." Franklin Aff. at 2. Thus, to access the CP Website, the user had to install Tor software, "which relays only the IP address of the last relay computer (the "exit node"), as opposed to the user's actual IP address." *Id.* Then, to download content from the CP Website, users had essentially had to pay in "points," which could be earned in various ways, including, as relevant here, uploading videos depicting child pornography, or paying for points with bitcoin ("BTC"). *Id.* at 3–4. A user earned additional points when other users of the CP Website downloaded a user's videos. The website "operated a digital hash-value check of videos uploaded to the CP Website" to ensure that any videos uploaded were unique compared to other videos on the site, *id.* at 4, thereby ensuring that users only received points for uploading child pornography not already on the website. Thus, when the defendant uploaded more than 500 videos between approximately June 25, 2016 and December 21, 2016, *id.* at 6, he was likely accruing points on the CP Website to use for future

downloads. Indeed, following the period when the defendant uploaded all the videos to the CP website, he then, between approximately May 31, 2017 and February 9, 2018, downloaded approximately 174 videos of child pornography from the CP Website. The CP Website also allowed users to purchase a "VIP" account using BTC, *id.* at 3, which the government believes the defendant to have done, on December 17, 2016, *id.* at 5–6 n.5.

After law enforcement seized the website's server in South Korea, they were able to pull back the veil of anonymity in which the website's users had hidden their activities. As relevant here, a forensic image of the server "revealed a transfer of approximately 0.00228809 BTC (worth about $1.80 at the time of transaction) on December 17, 2016 from a BTC address to [the CP] Website's BTC address starting with 1Hrb." *Id.* at 5. Law enforcement subpoenaed a virtual-currency exchange in the United States, which is required by U.S. law to collect identifying information on its customers, and learned that the BTC transfer starting with 1Hrb was from a BTC Exchange Account number starting with 5855, which was created on or about December 17, 2016 and registered in the name of the defendant, using the defendant's confirmed phone number and email address. Moreover, the BTC Exchange Account was funded by a checking account and credit card account registered in the defendant's name. Thus, the government has provided compelling evidence that the website user who uploaded and downloaded child pornography to and from the CP Website is the defendant.

The defendant's use of the CP Website was confirmed upon forensic examination of his own computer, which contained "at least two videos that thisthishold uploaded to" the CP Website. Gov't's Mot. at 10. This computer also contained over 500 videos and images of child pornography, most of which depicted sexually explicit conduct of pre-pubescent children. *Id.*

Among the videos recovered from the defendant's computer were eleven videos of the 14-year old younger sister ("Cooperating Witness" or "CW1") of the defendant's former girlfriend ("W2").

Upon subsequent investigation, the government learned that the defendant had surreptitiously produced the child pornography of CW1 from two hidden cameras during the six-month period of March to August 2014. The defendant's own face was recorded on at least two occasions as he covertly set up, and later adjusted the angle of, a camera hidden in the CW1's bathroom, to secretly record CW1, as she undressed and used the shower. Gov't's Mot. at 10. These videos had been edits and clipped to produce over 900 still-shot images focusing on CW1's "genitalia and pubic area." *Id*. at 11.

In addition, forensic examination of the defendant's computer has revealed that the defendant hacked into the computer in CW1's bedroom and remotely activated her web camera to record her in various stages of undress. *Id.* at 12. As confirmed by CW1 during an interview on April 29, 2019, the defendant used one of the images he obtained of CW1 in her bedroom with her breasts exposed to extort CW1, threatening to release a nude photo of CW1 unless she shared more images or videos with the defendant. *Id.* at 12. Forensic examination of the defendant's computer uncovered this image of CW1 with the word written on it "to the effect of 'show me more vids or I'll show everyone.'" *Id.* "Thereafter, CW1 immediately dismantled her web camera and got a new computer." *Id*.

In addition to this attempted extortion, CW1 told law enforcement that beginning in 2012, when she was just 12 years old, she began locking her bedroom door because the defendant would get into her bed while she was sleeping, and on multiple occasions, starting

6

when she was approximately 11 years old, the defendant touched her on the buttocks inappropriately when walking past her. *Id*. at 11–12.

The defendant's former girlfriend, W2, who as noted is the older sister of CW1, has advised law enforcement of an incident in which the defendant, on January 1, 2016, entered the bedroom of W2's adult sister ("W3"), who was asleep. *Id.* at 13. W3 woke up to find the defendant standing naked next to her bed and holding a pellet gun to her head and threatening to rape W3. W3 filed a police report about the incident, which for unknown reasons remains sealed. *Id*. While W3 has not yet been interviewed, both CW1 and W2 corroborate this story. *Id*.

Based on these incidents with CW1 and W3, the government posits that the defendant has not only distributed and produced child pornography but also "shown a willingness to engage in hands-on sexual abuse." Rough Transcript of Hearing (May 7, 2019) ("H'rg Tr. (Rough)") at 4:23–24.

## II.    LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*., provides that "a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained," and "establishes procedures for each form of release, as well as for temporary and pretrial detention." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (citing 18 U.S.C. § 3142(a)). The court is required, under 18 U.S.C. § 3142(f)(1), to hold a pretrial detention hearing, upon the government's motion for detention, before releasing any defendant charged with certain serious crimes, including "a crime of violence," which is defined to include "any felony under chapter . . . 110." 18 U.S.C. § 3156(a)(4)(C). A judicial officer "shall order" a defendant's detention before trial, *id.* § 3142(e)(1), if, after the detention hearing held under Section 3142(f), and consideration of "the available information concerning"

enumerated factors, *id.* § 3142(g), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id.* § 3142(e)(1). The facts used to support this finding "shall be supported by clear and convincing evidence." *Id.* § 3142(f). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

When a defendant is charged with enumerated offenses described in Sections 3142(e)(2), (e)(3) and (f)(1), "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" such an offense. 18 U.S.C. § 3142(e)(3). Once a rebuttable presumption is triggered, the defendant bears the burden of production "to offer some credible evidence contrary to the statutory presumption," *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985), while the ultimate burden of persuasion remains with the government, *see United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008); *see also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) ("In a presumption case such as this, a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (noting that the burden remains with the government to persuade the court that the defendant is a danger or poses a risk of non-appearance). The defendant is not required to rebut the presumption that the criminal activity is dangerous, or even to rebut the judicial finding as to probable cause, but only to "meet[] a 'burden of production' by coming

8

forward with some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707.

The judicial officer considering the propriety of pretrial detention must consider four factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim . . .;
> (2) the weight of evidence against the person;
> (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). At the detention hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1209–10 (D.C. Cir. 1996).

The standard of review for review of a magistrate judge's order for release is *de novo*, and a district judge conducting that review must "promptly," 18 U.S.C. § 3145(a), make an independent determination whether conditions of release exist that will reasonably assure the defendant's appearance in court or the safety of any other person or the community, pursuant to Section 3142(e)(1). *See* 28 U.S.C. § 636(a)(2) (authorizing magistrate judges to "issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial"); *id.* § 636(b)(4) (directing "[e]ach district court shall establish rules pursuant to which magistrate judges shall discharge their duties"); D.D.C. CRIM. R. 59.3(a) & (b) (providing that a magistrate judge's order issued "in a criminal matter not assigned to a district judge" and "for which review is requested in accordance with this Rule may be accepted, modified, set aside, or recommitted to the magistrate judge with instructions, after de novo review by the Chief Judge."); *see also*

9

*United States v. Henry*, 280 F. Supp. 3d 125, 128 (D.D.C. 2017) ("The Court reviews *de novo* whether there are conditions of release that will reasonably assure the safety of any other person and the community."); *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (noting that "although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge") (collecting cases). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Blanchard*, No. 18-mj-101 (GMH), 2018 U.S. Dist. LEXIS 176510, *9 (D.D.C. Oct. 15, 2018) (quoting *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011))).

### III. DISCUSSION

The defendant has not been indicted but, to date, charged only in a criminal complaint with conspiring to distribute child pornography, in violation of 18 U.S.C. § 2252(a)(2). Upon a finding of probable cause to believe the defendant committed the charged offense, this is a type of offense that triggers the rebuttable presumption, under Section 3142(e)(3), "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *See* 18 U.S.C. §3142(e)(3)(E) (including among enumerated offenses that trigger rebuttable presumption, "an offense involving a minor victim under section . . . 2252(a)(2)"). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, Nos. 18-3076, Consolidated with 18-3080, 2019 U.S. App. LEXIS 8966, at *7 (D.C. Cir. Mar. 26, 2019). Here, the government invokes the rebuttable presumption based on the defendant's danger to the community.

In evaluating probable cause, courts use a "flexible, common-sense standard," *Florida v. Harris*, 568 U.S. 237, 240 (2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)), requiring consideration of the "totality of the circumstances," *id.* at 244. As the Supreme Court recently emphasized, "[p]robable cause 'turn[s] on the assessment of probabilities in particular factual contexts' and cannot be 'reduced to a neat set of legal rules.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Gates*, 462 U. S. at 232). A showing of probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 586 (quoting *Gates*, 462 U.S. at 243 n.13).

### A. Finding of Probable Cause That Defendant Committed Offense Triggering Rebuttable Presumption

Based on the evidence presented and proffered at the hearing, and the entire record, as summarized, *supra* in Part I, the Court finds more than "a substantial chance" exists that the defendant committed the child pornography distribution crime alleged in the criminal complaint. In brief, the defendant downloaded approximately 174 videos with file names and descriptions indicative of child pornography from, and uploaded more than 500 videos and images of child pornography to, the CP Website. Moreover, the defendant produced child pornography by secretly recording his then-girlfriend's minor younger sister, CW1, between March and August 2014, by installing a camera in her bathroom, and by capturing images from a web camera installed in CW1's bedroom. Finally, the defendant attempted to "sextort" CW1 by threatening to release a surreptitiously-recorded nude image of CW1 unless she shared more such images with the defendant. Accordingly, in light of the finding of probable cause to believe that the defendant committed the charged offense, the rebuttable presumption under Section 3142(e)(3)(E) is triggered here.

### B. Consideration of Factors Under 18 U.S.C. § 3142(g)

The next task is determining whether the defendant has rebutted the presumption of pretrial detention by showing any condition or combination of conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. In this regard, the defendant urges that he be released to the custody of his parents with continued electronic monitoring and no access to internet-connected electronic devices. The sufficiency of these proposed release conditions is addressed as part of consideration of the four factors, under 18 U.S.C. § 3142(g). On the current record, these factors overwhelmingly favor pretrial detention and show that not even the stringent release conditions imposed by the Magistrate Judge can reasonably assure the safety of the community.

### 1. Nature and Circumstances of the Charged Offense

The first factor, the nature and circumstances of the charged offense, favors detention, since the charged offense is extremely serious as it involves the distribution of child pornography depicting the sexual abuse of minor victims, including in this case pre-pubescent children, the production of child pornography, the extortion of a minor child in order to obtain additional images, and hands-on sexual predation. Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms. Child pornography victims "are harmed initially during the production of images, and the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims," and "live with persistent concern over who has seen images of their sexual abuse" and how those images are being used to cause additional harm. U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at vii (available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf). Child pornography is used to "groom" other underage

victims to engage in sexual acts and, when shared in online child pornography groups that essentially form communities, "validates and normalizes the sexual abuse of children" and "contribute[s] to the further production of child pornography and, in the process, to the sexual abuse of children." *Id.* As Congress found in enacting the Child Pornography Prevention Act of 1996, "the existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." Pub. L. No. 104-208, § 121, 110 Stat. 3009 (codified at 18 U.S.C. § 2251). Reflecting the seriousness of this charge, a violation of Section 2252(a)(2) carries a minimum term of imprisonment of five years, and up to twenty years. *See* 18 U.S.C. § 2252(b)(1).

The facts alleged by the government present a disturbing case. To minimize the risks of further harm, the Magistrate Judge imposed, as release conditions, *inter alia*, that the defendant be subjected to permanent home detention at his parent's house, with location monitoring, that he not use any device with internet access, have no contact with witnesses and not receive any visitor in possession of any device with internet access. *See* Order Setting Conditions of Release at 2, ECF No. 6; Order Modifying Conditions of Release to Add Additional Conditions, ECF No. 17. These conditions were intended to restrict the defendant's access to the internet and to mitigate the risk of further harm to children, through the distribution of child pornography or other sexual abuse or exploitation of children.

These release conditions, however, even with the additional conditions imposed by the Magistrate Judge, are simply insufficient for several reasons. First, monitoring compliance with the release conditions would be difficult. The defendant has shown a high level of sophistication with computers and electronic devices, making the monitoring of his compliance difficult. *See* H'rg Tr. (Rough) at 8:5–11. Evidence of this sophistication includes the defendant's building of

13

his own RAID configured computer, hacking CW1's computer to commandeer her web camera, and the use of Tor anonymizing software and bit coin mixers to conceal his activities. *See id.* Second, the defendant needs only a hand-held device to access and/or distribute child pornography and the absence of such small devices in the defendant's residence cannot be meaningfully verified on a continuous basis. *See id.* at 8:1–5; 18:16–23. Third, the defendant resides in the same town, Glendale, New York, where at least one of his victims also resides. *See id.* at 5:14–25; 14:2–11. Finally, the defendant continues to reside with his parents, where he was able to engage with virtual impunity for years in the underlying criminal conduct. This history does not inspire confidence that the defendant's parents have sufficient ability, no matter how well intentioned, to monitor his compliance with the defendant's conditions of release. *See id.* at 18:24–19:8. Thus, the risk of re-offending looms large. In light of the dangerousness to the most vulnerable members in our society—children—the proposed release conditions fall short of providing reasonable assurances for the safety the community.

        2.        **The Weight of the Evidence**

The weight of the government's evidence against defendant is compelling. The government supports the child pornography distribution charge with an affidavit from Special Agent Franklin detailing how a review of the defendant's account on a website revealed approximately 174 downloads of child pornography between May 31, 2017 and February 9, 2018, and over 500 uploads of child pornography between June 25, 2016 and December 21, 2016. Franklin Aff. at 6. The defendant's own face was recorded on at least two occasions as he covertly set up the camera, and later adjusted the angle of the camera, installed in the bathroom that was subsequently used to record CW1 undressing and using the shower. Gov't's Mot. at 10. Finally, CW1 verified images found on the defendant's electronic device as images of herself,

14

taken surreptitiously, and used by the defendant to attempt extortion. Gov't's Mot. at 11. Therefore, the ample weight of the evidence favors detention.

### 3. The History and Characteristics of the Defendant

As to the third factor requiring consideration of the defendant's history and characteristics, the defendant, age 29, has no prior criminal history and is self-employed. Pretrial Services Report ("PSR") at 1, 3, ECF No. 2. Nonetheless, evidence on the record suggests that he has committed other criminal acts posing the risk of danger to others, even beyond the surreptitious production and distribution of child pornography, and the extortion of a minor with those images. In an interview with law enforcement, CW1 averred that she began locking her bedroom door when she was 12 years old because she would often awake to find the defendant in bed with her, and that from the age of 11 the defendant would touch her on her buttocks when walking past her. Gov't's Mot. at 11. Furthermore, according to the defendant's then-girlfriend, W2, and as corroborated by CW1, the defendant on January 1, 2016, entered W3's bedroom when W3, an adult, was asleep, and held a pellet gun to W3's head, threatening to rape her. *Id.* at 13. In short, the defendant's course of conduct over a period of years, showing repeated and varied forms of sexual predation of both minors and adults leaves the Court with no confidence that the defendant will not reoffend if not detained.

### 4. The Danger to the Community

The fourth factor, the danger to the community posed by defendant, also weighs in favor of detention since the nature of the crime charged—distribution of child pornography—weighs heavily against release. As discussed, *supra* in Part III.B.1, the distribution and possession of child pornography constitutes a danger to the community, resulting in physical and mental harm to the children depicted, normalizing such conduct among those sharing this contraband, and

creating a market for such contraband, and thereby encouraging the victimization of more children. These significant harms and dangers animated the Congress to create the statutory presumption of detention in these cases. For the aforementioned reasons, the Court believes that the defendant presents a significant danger to the community and, given the risks posed, finds that no condition or combination of conditions will reasonably keep the community safe were the defendant to be released.

## IV. CONCLUSION

For the foregoing reasons, upon consideration of the evidence proffered at the detention hearing, the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in Section 3142(c), the Court finds clear and convincing evidence that defendant's pretrial release would constitute an unreasonable danger to the community, and that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were he to be released pending trial. Defendant has failed to rebut the presumption in favor of pretrial detention required by Section 3142(e)(3)(E).

Accordingly, the government's motion for review and appeal of release order is granted and the defendant shall remain in the custody of the Attorney General for confinement pending a final disposition in this case. An order consistent with this Memorandum Opinion and in accord with 18 U.S.C. § 3142(i), will be entered contemporaneously.

Date: May 8, 2019

_____
**BERYL A. HOWELL**
Chief Judge